UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WALTER M. MISTERKA, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-cv-10203-MGM |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social | * | |
| Security Administration, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR ORDER REVERSING DECISION OF COMMISSIONER AND
DEFENDANT'S MOTION FOR ORDER AFFIRMING COMMISSIONER
(Dkt. Nos. 14 and 24)

September 21, 2016

MASTROIANNI, U.S.D.J.

## I.  INTRODUCTION

This is an action for judicial review of a final decision by Carolyn Colvin, the Acting Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. § 405(g) and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3). Walter M. Misterka, Jr. ("Plaintiff") asserts the Commissioner's decision to deny him such benefits—memorialized in an August 20, 2013 decision of an administrative law judge ("ALJ")—was in error. Plaintiff has filed a motion for order reversing the decision of the Commissioner and the Commissioner has moved to affirm. For the reasons set forth below, the court allows the Commissioner's motion (Dkt. No. 24) and denies Plaintiff's motion (Dkt. No. 14).

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for SSDI and SSI on November 10, 2011 and alleged disability since December 15, 2008. (Administrative Record ("A.R.") 224-32, 238-51.) Plaintiff was notified by the Social Security Administration that his claims had been initially denied on January 12, 2012 and had subsequently been denied upon reconsideration on May 31, 2012. (*Id.* at 106-09, 116-21.) Plaintiff requested a hearing in front of an administrative law judge, which took place on August 19, 2013. (*Id.* at 122-23, 200-04.) In a written decision, the ALJ determined Plaintiff was not disabled. (*Id.* at 8-17.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final and ripe for judicial review. (*Id.* at 1-4.) Thereafter, Plaintiff filed the instant action, the Commissioner compiled the administrative record, and the parties filed the cross-motions presently at issue.

### B. Medical History on Record

Plaintiff alleges disability due to mental health problems and insomnia. (*Id.* at 10, 31.) Plaintiff was 44 years old on the alleged disability onset date of December 15, 2008. (*Id.* at 34.) He completed high school and his past relevant work experience has been that of a forklift operator, insulation installer, machine operator, and pest control worker. (*Id.* at 50-51.)

Beginning in October 2009, Plaintiff sought treatment at YOU, Inc. Southbridge Family Center for symptoms of anxiety and feeling overwhelmed by family and financial responsibilities. (*Id.* at 347.) At intake, Plaintiff was diagnosed with "adjustment disorder with mixed anxiety and depressed mood" and a Global Assessment of Functioning ("GAF") score of 55.[1] (*Id.* at 354.) In

---

[1] The GAF is based on a hundred point scale, broken down into ten categories, which measures a clinician's subjective judgment of an individual's overall level of psychological, social, and occupational functioning. S*ee* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 34 (4th ed. 2005). A GAF score of 51-60 means moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* A GAF score of 41-50 means serious symptoms or serious impairment in social, occupational, or school functioning. *Id.*

November 2010, Plaintiff was diagnosed by a YOU, Inc. clinician with generalized anxiety disorder and a GAF score of 51. (*Id.* at 346.)

On June 30, 2011, Plaintiff began therapy with Thomas Porter, LICSW at Harrington Behavioral Health, where he reported "struggling with panic attacks and being out of work for two years due to a felony on his [criminal offender record information ("CORI")]."[2] (*Id.* at 362.) Plaintiff also requested "help with his current marriage around communication issues" and medications to help him relax and sleep. (*Id.*) A mental health examination conducted by Mr. Porter was normal aside from observed anxious mood and racing thoughts. (*Id.* at 363.) A functional status assessment noted Plaintiff required no assistance caring for himself, remembering everyday details, handling finances, shopping, driving, or getting along with others, but did note that he was unable to seek, obtain, and maintain employment. (*Id.*) Plaintiff was diagnosed with panic disorder without agoraphobia and a GAF score of 45, indicating a serious impairment.[3] (*Id.* at 364.)

At a July 2011 appointment with Mr. Porter, Plaintiff again reported being unable to obtain employment due to his criminal history. (*Id.* at 365.) On the mental status examination, Mr. Porter reported that Plaintiff's short term memory was impaired, his attention span was decreased, and a decrease in concentrating ability was observed. (*Id.*) Mr. Porter again noted Plaintiff exhibited "racing thoughts." (*Id.*) Nonetheless, Mr. Porter noted that Plaintiff "presented as stable and interactive." (*Id.*) At appointments on October 20, 2011 and October 27, 2011, Plaintiff again reported being unable to obtain work due to his criminal history and expressed feeling depressed that he was unable to provide for his family. (*Id.* at 367, 369.) At both visits, Mr. Porter reported decreased attention span, decreased concentrating ability, and anxious mood. (*Id.*) Mr. Porter again noted that Plaintiff "presented as stable and interactive." (*Id.*) At the October 27th appointment, Mr.

---

[2] It is also noted in the written assessment portion of the report that a felony on Plaintiff's CORI "keep[s] him from getting work even though he earned a [Commercial Driver's License]" two years prior. (A.R. 364.)
[3] No explanation accompanied this GAF score assigned to Plaintiff.

3

Porter reported Plaintiff's problems included "anxiety and panic attacks due to current stressors of being unemployed and not having money enough to make life a little easier" and "feel[ing] so depressed each day about not working that [he] lose[s] [his] motivation to even get up in the morning." (*Id.* at 371.)

On November 8, 2011, Plaintiff was evaluated by Resul Ozbayrak, M.D. of Harrington Behavioral Health. (*Id.* at 374-76.) The mental status examination was normal and Plaintiff's mood was "appropriate" without anxiety or depression. (*Id.* at 375.) Dr. Ozbayrak diagnosed anxiety disorder and episodic mood disorders and assigned a GAF score of 55, indicating moderate impairment. (*Id.* at 375-76.) A week later on November 15, 2011, Mr. Porter reported Plaintiff exhibited a decreased attention span, decreased concentrating ability, and anxious mood. (*Id.* at 377.) Then, on November 23, 2011, Dr. Ozbayrak again reported normal findings on the mental status examination and reported "appropriate, not agitated, not anxious and not depressed" mood. (*Id.* at 379.) Harrington Physician Services records from December 2, 2011 indicate a diagnosis of bipolar disorder and chronic pain. (*Id.* at 403.)

In April 2012, Mr. Porter completed a Psychiatric Disorder assessment form, co-signed by Dr. Ozbayrak, reporting Plaintiff suffered from episodic mood disorder and anxiety and had a GAF score of 45, indicating serious impairment. (*Id.* at 408-10.) The report stated Plaintiff lacked energy and motivation, had poor focus and memory, could not sustain concentration and attention for extended periods without distraction by psychologically based symptoms, and could not remember work-like tasks or instructions.[4] (*Id.* at 408.) The report also stated Plaintiff had poor hygiene, was irritable with others, and would be unable to cope with an employer's criticism. (*Id.* at 409.) The

---

[4] Although Mr. Porter indicated Plaintiff exhibited decreased attention span and concentration, Dr. Ozbayrak noted Plaintiff's orientation, memory, and attention were normal on both of his November 2011 evaluations.

4

report stated Plaintiff had not resigned from or been fired from jobs because of psychiatric symptoms. (*Id.*) The report also indicated psychological testing had not been done. (*Id.*)

On January 10, 2012, state agency consultant Lisa Fitzpatrick, Psy.D. found that some of Plaintiff's limitations related to his anxiety and depression would restrict him to jobs with simple, routine tasks with limited public contact, but ultimately found him not to be disabled. (*Id.* at 60.) Dr. Fitzpatrick found moderate limitations with respect to Plaintiff's attention, concentration, timeliness, and ability to complete a normal workday without interruptions from psychological based symptoms. (*Id.* at 61-62.) On May 30, 2012, state agency consultant Jan Jacobson, Ph.D. also found Plaintiff not disabled, but restricted to simple routine tasks with limited public contact. (*Id.* at 83, 87.)

During medication visits in January, February, March, May, July, August, and October 2012, Dr. Ozbayrak reported normal findings on Plaintiff's mental status examinations and observed that Plaintiff's mood was appropriate, not agitated, and not anxious. (*Id.* at 425, 429, 432, 486, 487, 489, 490). In October 2012, Plaintiff returned to therapy with Mr. Porter. (*Id.* at 491.) Plaintiff reported that Dr. Ozbayrak said Plaintiff "was no longer disabled and could return to work." (*Id.*) Mr. Porter again noted that Plaintiff's criminal history "is keeping him from working." (*Id.* at 492.) A mental status examination was normal aside from an anxious mood and racing thoughts. (*Id.*) Mr. Porter assessed a GAF score of 50, indicating serious impairment. (*Id.* at 493.)

On June 19, 2012, clinical neuropsychologist Jill Damon-Minow, Psy.D. conducted a neuropsychological evaluation, concluding Plaintiff primarily demonstrated impairments in concentration and cognitive processing speed, and that Plaintiff's "severe current levels of depression and anxiety are [very likely] primary contributing factors to the deficits observed."[5] (*Id.* at

---

[5] Dr. Damon-Minow also stated: "It is notable that [Plaintiff] reported hearing loss that is currently untreated in that he does not wear his hearing aids, and as hearing loss can mimic memory difficulties, this may also be a factor in his daily experience of memory problems." (A.R. 502.)

499-504.) Dr. Damon-Minow noted Plaintiff was appropriately groomed and "performed within normal limits on the first trial of a recognition memory symptom validity test." (*Id.* at 500.) Dr. Damon-Minow concluded that the "test results are not suggestive of a neurodegenerative condition." (*Id.* at 502.)

On January 9, 2013, psychiatrist David Morin, M.D. completed a check-box assessment form, indicating Plaintiff had a number of marked limitations, including poor concentration and focus, which affect his ability to perform work-related activities. (*Id.* at 524-26.) On January 20, 2013, Dr. Morin reported the mental status examination was normal aside from anxiety and depressed mood, and found Plaintiff's short term, remote, and recent registration memory intact. (*Id.* at 559.) On February 13, 2013, Dr. Morin observed Plaintiff with an appropriate, not anxious or depressed mood and again noted a normal mental status examination. (*Id.* at 560.) On February 14, 2013, Dr. Morin diagnosed Plaintiff with anxiety disorder, bipolar disorder, episodic mood disorder, and panic disorder without agoraphobia, and a GAF score of 55, indicating moderate impairment. (*Id.* at 562.) From March through August 2013, Dr. Morin reported that Plaintiff's mental status examinations were normal aside from occasional depressed and/or anxious mood. (*Id.* at 563-65.)

At the administrative hearing on August 19, 2013, Plaintiff testified that he was unable to work due to bipolar disorder, OCD, and insomnia. (*Id.* at 36.) He testified feeling restless and anxious, and that his bipolar disorder and OCD prevented him from working with others, all of which contributed to his inability to perform even simple work. (*Id.* at 38-39.) Plaintiff also described physical limitations including pain in his legs and knees from prolonged standing and lower back pain.[6] (*Id.* at 38.) Plaintiff's counsel clarified that, although Plaintiff had "some physical

---

[6] In ascertaining Plaintiff's limitations, the ALJ presented to Plaintiff the hypothetical of a job folding and sorting laundry with a sit/stand option. (A.R. 38.) In his testimony, Plaintiff presented various, vague reasons as to why he was unable to perform such work, but ultimately conceded that the requirements of such a job and certain modifications would accommodate some of the objections raised. (*Id.* at 38-40.)

6

overlay" that impaired his ability to work, the primary inquiry was with respect to his mental problems, which prevented him from performing even simple, unskilled work. (*Id.* at 40, 42.) During cross-examination by his attorney, Plaintiff testified he was unable to concentrate or finish a task, allegedly due to his medication. (*Id.* at 44-45.) He also described his insomnia, testifying he got no sleep two to three times a week, renerding him lethargic and "basically useless." (*Id.* at 45.)

Also at the hearing, vocational expert Erin Bailey testified as to the exertional level of Plaintiff's past work experience and the availability of jobs which could accommodate certain hypothetical limitations. (*Id.* at 49-52.) Ms. Bailey answered that an individual of Plaintiff's age, education, and past work history who is capable of light, unskilled work with simple instructions and a sit/stand option that is isolated from the public and has only occasional contact with others, would be able to perform work as an assembler, inspector, or sorter. (*Id.* at 52.)

### III. STANDARD OF REVIEW

The role of a district court reviewing an administrative law judge's decision is limited to determining whether the conclusion was supported by substantial evidence and based on the correct legal standard. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F. 2d 218, 222 (1st Cir. 1981)). Additionally, it is the Commissioner's responsibility to weigh conflicting evidence and decide issues of credibility. *Rodriguez,* 647 F.2d at 222.

## IV.    DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is entitled to SSDI benefits if, among other things, he has an insured status and, prior to its expiration, is disabled. *See* 42 U.S.C. § 423(a)(1)(A) and (D). Entitlement to SSI, on the other hand, requires a showing of both disability and financial need. *See* 42 U.S.C. § 1381a. Neither Plaintiff's insured status nor his financial need is challenged. Therefore, whether Plaintiff has a disability such that he may qualify for SSDI and SSI is the only issue at hand.

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual is considered disabled under the Act:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do other work, the application is granted.

*See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, at step one, the ALJ found Plaintiff had not performed any substantial gainful activity after his alleged onset date of December 15, 2008. (A.R. 10.) At step two, the ALJ found Plaintiff had several severe impairments during this period, specifically, insomnia, bipolar disorder, mood disorder, depression, and anxiety/panic disorder without agoraphobia. (*Id.*) At step three, the ALJ determined Plaintiff's impairments do not, singly or in combination, meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 14.) The ALJ found that Plaintiff's RFC allows him to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following accommodations: sit or stand option at will; isolated from the public with only occasional contact with others; and simple instructions. (*Id.* at 15.) In light of this RFC, the ALJ found at the fourth step that Plaintiff is unable to perform any past relevant work. (*Id.* at 16.) At step five, the ALJ, considering Plaintiff's age, education, work experience, and RFC, found "there are jobs that exist in significant numbers in the national economy that claimant can perform," such as assembler, inspector, and sorter. (*Id.* at 16, 17.) As a result, the ALJ determined Plaintiff was not disabled and denied his application for SSDI and SSI benefits. (*Id.* at 17.)

## V. ANALYSIS

Plaintiff argues the ALJ erred by failing to provide substantial evidence to support his assessment of Plaintiff's credibility and residual functional capacity ("RFC"). The court finds Plaintiff's arguments unavailing and the ALJ's decision supported by substantial evidence.

### A. Assessment of the Plaintiff's credibility

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human*

9

*Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). Plaintiff asserts the ALJ's credibility determination was flawed because the ALJ (1) improperly considered Plaintiff's criminal record and (2) did not consider all the relevant factors enumerated at 20 C.F.R. § 404.159(c)(1) and in *Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 29 (1st Cir. 2001). The ALJ gave three reasons for not crediting Plaintiff's assertions of disability. First, the ALJ noted that in the months before and after he applied for disability benefits, treatment notes state Plaintiff reported he was not working because his criminal record prevented him from getting a job, not because a disability prevented him from working. (A.R. 13, 362-367, 369 411, 492.) Second, the combination of Plaintiff's criminal history, which involves crimes of dishonesty, and inconsistencies between Plaintiff's testimony and other evidence in the record caused the ALJ to view Plaintiff's testimony with caution. (A.R. 13.) Finally, the ALJ found Plaintiff's disability claims not credible because the record contained significant evidence indicating that marital and financial problems, rather than mental impairments, were the "primary cause of [Plaintiff's] emotional state." (A.R. 13.)

While two of the three reasons the ALJ gave for not crediting Plaintiff's testimony referenced Plaintiff's criminal history, Plaintiff's assertion that the ALJ relied "almost entirely on the fact that [Plaintiff] has a criminal history to support his finding that [Plaintiff] is not credible," is misplaced. (Dkt. No. 15, Pl.'s Mem. Supp. Mot. for J. on the Pleadings ("Pl. Mem.") 1.) The inconsistencies between Plaintiff's reports to his clinician contemporaneous with his application and his testimony at the hearing, not his criminal record, were the main cause for ALJ's decision not to credit Plaintiff's testimony regarding his disability. Inconsistencies between an applicant's reports to a practitioner and testimony before the ALJ, especially if not explained, may be considered by an ALJ making a credibility determination. *See Teixeira v. Astrue*, 755 F.Supp.2d 340, 347-48 (D. Mass. 2010).

Plaintiff also asserts the ALJ's credibility determination was flawed because the ALJ did not consider all the relevant factors enumerated at 20 C.F.R. § 404.159(c)(1) and in *Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 29 (1st Cir. 1986).

At the hearing, Plaintiff asserted that he was disabled because his mental health issues and insomnia prevented him from obtaining or maintaining a job.[7] (A.R. at 31.) The ALJ did not credit Plaintiff's reports regarding "the intensity, persistence and limiting effects" of Plaintiff's symptoms. Plaintiff asserts this decision was erroneous because the ALJ failed "to make specific findings as to the relevant evidence he considered in determining to disbelieve [Plaintiff]" and by failing to consider the "*Avery* factors" in assessing Plaintiff's credibility. (Pl. Mem. 6 (quoting *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986)).) *See Avery*, 797 F.2d at 29. The court finds the ALJ's credibility determination complied with 20 C.F.R. § 404.1529(c)(1) and *Avery* and was based on substantial evidence such that it is entitled to deference by this court.

In *Avery*, the First Circuit held that a hearing officer must consider certain factors when assessing a claimant's subjective complaints of symptoms, including the nature, location, duration, and frequency of any symptom; precipitating and aggravating factors; dosage, effectiveness, and adverse side-effects of any medication; treatment for relief of symptoms; and the claimant's daily activities. *Avery*, 797 F.2d at 29. The factors are also set forth at 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The relevance of the factors will vary depending on a claimant's symptoms and the ALJ "need not expressly discuss every enumerated factor." *Balaguer v. Astrue*, 880 F. Supp. 2d 258, 268 (D. Mass. 2012) An administrative law judge complies with *Avery* when he performs an adequate inquiry into the *Avery* factors at the hearing and considers each *Avery* factor in reaching his

---

[7] At the start of the hearing Plaintiff affirmed that the only reasons for his disability claim were his mental health problems and insomnia. (A.R at 31.) Later during his testimony he asserted that various physical ailments prevented him from doing certain jobs proposed by the ALJ and Vocational Expert. (A.R. at 37-39.) Still later in the hearing, under questioning from his attorney, Plaintiff agreed that his disability stemmed from his mental problems, rather than from physical problems. (A.R. at 40.)

determination, even if he does not provide "an explicit written analysis of each factor." *See Vega v. Astrue,* 2012 WL 5989712, at *8 (D. Mass. Mar. 30, 2012).

At the hearing, the Plaintiff testified about his insomnia, bipolar disorder, OCD, anxiety, and depression. He described the frequency and duration of his insomnia and depression. (A.R. at 42, 45.) Plaintiff listed his medications and identified an inability to concentrate as a side effect of his medications. (A.R. at 45.) Plaintiff also described a typical OCD episode, as well as his typical daily activities (*Id.* at 46.) The court finds an "adequate inquiry into the *Avery* factors" was made at the hearing and infers the ALJ considered that testimony when reviewing the record in its entirety. As articulated by the court in *Vega*:

> While a contrary decision might well have been reached in this case, and such a decision would certainly be reasonable, it is not for this Court to re-weigh the evidence. *See Lill,* 812 F. Supp. 2d at 103 ("[I]t is not the function of this Court to second-guess credibility assessments of the hearing officer that are supported by sufficient evidence.") (citation omitted). Thus, the hearing officer's credibility determination is entitled to deference by this Court.

*Id.* at *10. Certainly, the ALJ could have engaged in a more thorough analysis of the *Avery* factors to determine the severity of Plaintiff's symptoms, but even without such an analysis, the ALJ's finding that Plaintiff was not disabled is supported by substantial evidence. *See Frustaglia*, 829 F.2d at 195 (affirming ALJ decision where "more express findings" would have been "preferable," but entire record includes substantial evidence to support ALJ determination).

### B.     Assessment of the Plaintiff's Residual Functional Capacity

Plaintiff also argues the ALJ failed to provide a sufficient explanation as to how the evidence on record supports the ALJ's RFC assessment. (Pl. Mem. 7-8.) In making this argument, Plaintiff relies on *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, a Social Security Ruling, which states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996); (Pl. Mem. 8.) In the decision, the ALJ stated he considered the entire record, including all symptoms, and opinion evidence in his RFC assessment.[8] (A.R. 15.) The ALJ described the weight he gave to the various providers and reviewers. For example, he credited the narrative notes from Dr. Morin, but discredited a form completed by Dr. Morin because the form included no explanation for the answers recorded and those answers were not consistent with Dr. Morin's later notes. (A.R. 12, 524-26, 559-70.) The ALJ's RFC assessment reflects the findings of practitioners that Plaintiff's symptoms included anxiety and attention difficulties and Plaintiff's own testimony, to the extent credited by the ALJ. The provider and reviewer opinions together with Plaintiff's own testimony at the hearing, provide substantial evidence to support the ALJ's finding that Plaintiff could perform light work with a sit-stand option at will, that allowed him to remain isolated from the general public, required no more than occasional contact with others, and required him to remember and carry out only simple instructions. *Reyes v. Colvin*, 2015 WL 727935, at *5 (D. Mass. Feb. 19, 2015). (*See* A.R. 15.) This court must uphold the RFC determination so long as it is supported by substantial evidence. *See Blackette v. Colvin*, 52 F. Supp. 3d 101, 113 (D. Mass. 2014) (citing *McDougal v. Astrue,* 2010 WL 1379901, at *10 (D. Mass. Mar. 31, 2010)). Accordingly, the Commissioner's decision is affirmed.

---

[8] As part of the record, the ALJ also considered Plaintiff's testimony to the extent that he found it to be credible. Having already determined that the ALJ's credibility determination was proper, the ALJ's reliance on his credibility determination in his RFC assessment is also not in error. *Compare Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 312 (D. Mass. 1998) (an RFC determination that hinges on an inadequate credibility determination is improper).

## VI. CONCLUSION

The court DENIES Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) and therefore ALLOWS Defendant's Motion to Affirm the Commissioner's Decision (Dkt. No. 24). The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District